We'll hear argument now in the case of the matter of Husain. Mr. Salem. Good morning. May it please the Court. Counsel. Your Honor, my name is Maurice James Salem. I represent the appellant in this case. The appellant in this case is an attorney who signed his client's signature with their permission on bankruptcy court documents that did not need to be signed. And these facts are not in dispute. That is, all the signatures that the attorney signed were given to his clients, gave them permission to sign it. And he signed it on forms that the bankruptcy court doesn't need to be signed. They typically left blank. For that, he was permanently disbarred from the bankruptcy court, from the district court. NARDC is waiting on your ruling to determine whether to disbar him from there. Wasn't there a second part to that? Even if you accepted that theory that whatever he submitted was properly submitted pursuant to the declaration, didn't he in fact submit documents subsequent to that where he made the signatures on those documents himself? The declaration only allows you to submit documents unsigned by the debtor client at that time. It doesn't authorize you to, through the course of the bankruptcy, submit anything you want purportedly under the signature of the debtor client. So didn't he in fact submit documents subsequent to the submission of the declaration that the client had not signed? And wouldn't that be sufficient to support Judge Cox's action? Your Honor, the facts in this case, the record shows that none of the subsequent documents that were signed by my client needed to be signed. The only thing that needed to be signed between the years 2006 and 2014 is that one form, the Declaration of Electronic Filing. In that form, which is Appendix A, it has all the clients that are at issue. In there, they all signed it. And in there, Your Honor, the form says that the individual signs under oath, under the declaration of, declared under perjury that all the information he conveys or she conveys to the attorney is under oath. And so that leads me to the initial point that opposing counsel had in his brief that my client's conduct is inconsistent with the federal law, which requires debtors to verify and sign these documents under the penalties of perjury. Your Honor, that's absolutely false. Appendix A is the declaration that says each and every one of his clients signed those forms, and that's not in dispute. All the forms, all the debtors. Now, Your Honor, opposing counsel threw words around in his brief such as deceive and forgery. And the dictionary definition of those words simply do not apply here, deceive and forgery. Mr. Salem, you haven't yet mentioned a number of the Bankruptcy Court's findings. One is that of a sample of 110 filings that filed by your client, 94 had identical schedules of assets. The implication is that they were obviously copied and false. Another finding of the Bankruptcy Court is that your client committed perjury during this hearing, and perjury is a perfectly standard reason to disbar a lawyer. I do think you need to address these issues. Your Honor, first with respect to the assets, it is typical standard among bankruptcy attorneys when it comes to a debtor's home, furniture, to put repetitive, identical assets, such as Because all bankruptcy petitioners have, in fact, the same assets. You know, the word is used as ordinary lot of furniture, and the other word is ordinary TV or things like that. That's, you know, my observation is that's typical practice, Your Honor. And my word for it is fraud, fraud on the Bankruptcy Court. And fraud on the Bankruptcy Court is a good reason to disbar a lawyer. And if that's typical bankruptcy practice, we may need more disbarments. Your Honor, let's bring them all. I could show you many that I've seen that are exactly that way, and so I'll leave it with that, Your Honor. So there's a lot of attorneys, and they're doing it right now, Your Honor. Ordinary lot of furniture, ordinary TVs because they don't go through the exact specific details because of the time it concerns. Now, moving with respect to perjury, Your Honor, with all due respect, there is nothing in here, in the record, that shows my client committed perjury. And as I said, my client, all his testimony was accurate, and I don't One of the specific findings of the bankruptcy judge was that your client blamed some of these problems on an assistant. And the bankruptcy judge found that that was an intentionally false statement, that these filings reflected your client's own decision. Now, you could argue, I suppose, that that finding is clearly erroneous, but I don't see such an argument in your brief. Have I missed something? Your Honor, his assistant No, look, my question is concrete. Did I miss an argument in your brief? Did you argue that that finding is clearly erroneous? I did not argue that it was clearly erroneous. I argued the law there, Your Honor, and the law that under the declaration that was signed, those subsequent documents that my client's assistant either photocopied the signatures on or put on there without my client's consent is irrelevant. Because the document that was done by my client's assistant could have been submitted blank, Your Honor. It didn't have to be signed. And this is what goes to my argument with the I don't understand how a potential legal defense is licensed to lie in a federal judicial proceeding. Your Honor, he did not lie. The bankruptcy judge found that your client lied under oath. Right? Right. And you don't say that that finding is clearly erroneous. Well, it's awfully hard to make any progress in this case given that. Your Honor, it is clearly erroneous simply because there is no evidence before the bankruptcy judge to show that that's a lie. It's just his word that he didn't give his assistant the permission to photocopy the signatures and his assistant saying that she did. There's no other evidence there for the judge to find that. And this court can find that on its own, I believe, sua sponte. But, Your Honor, my argument, I agree with you, and that's something maybe I should have raised where it says it's clearly erroneous. All right. Here's another one. Go ahead. The bankruptcy judge found that your client told his clients that it was proper to omit assets from their schedules. In other words, told his clients that it was proper to commit bankruptcy fraud. That's an express finding. It's at page 16 of the bankruptcy judge's opinion. I don't see any discussion of that finding in your brief. Have I missed something? Your Honor, what you're doing is going to be. I've either missed it or not. Have I missed something in your brief? No, you have not. Okay. Your Honor, but as I said, the main. Telling clients it is proper to omit assets from their schedules of assets is classic bankruptcy fraud. I mean, it means your client has committed a felony. I mean, that's the. . . how does one avoid that? Let me respond to that, please, Your Honor, very specifically. You should have responded in your brief. Your Honor, I did. That's the time to make arguments. In my main brief, I cited the state court case, the Levy case, and that's the Illinois State Supreme Court case. In that, Your Honor, in that case, an attorney signed the signature of another attorney on a check, forged it. This doesn't have anything to do with signatures. It does. If you let me just complete this. The attorney signed, without permission, another attorney's name on a check. It's forgery. He deposited that check into an account. The state Supreme Court said this is not forgery because he didn't gain anything. That attorney didn't profit anything. That's the Levy case in my brief, Your Honor. So on the basis of that case, Your Honor, both deceiving and forgery doesn't apply because those are state causes of actions. And the state Supreme Court spoke on that in Levy. Are you pretending that it is permissible for a federal bankruptcy lawyer to tell clients that they can omit assets from their schedules of assets? No, Your Honor. I believe that wasn't. Of course it's not permissible. It is a crime. And the bankruptcy judge found as a fact that your client had committed that felony. And your brief doesn't mention it. Your Honor, my brief addresses what he was sanctioned for. He was sanctioned for signing. That's one of the things he was sanctioned for. That's why the bankruptcy judge made that finding a fact. Your Honor, the only other case similar to this in this district is the Lew case where that attorney was disciplined and permanently disbarred. But that attorney stole $600,000. And this attorney here, Your Honor, didn't gain anything. Did not gain anything at all, Your Honor. And based on the state definition of what forgery and deception is, this doesn't apply, Your Honor. And to permanently disbar him, an attorney who had exemplary record for 16 years of practice, never been in trouble in the federal or administrative, and for doing something that shouldn't have been done, signing those signatures, okay, but there was no harm to him. He could have left them blank. And that's what typically is done. That's what the practice is. And Judge Easterbrook, with respect to Judge Cox's findings, all I could say is the typical practice of attorneys right now is they put in their schedules ordinary lot of furniture, ordinary things, and maybe that shouldn't be the way. Maybe the rules should be changed. And in fact, Your Honor, after this case, the bankruptcy court did change the rules. The Declaration of Electronic Filing doesn't apply after 2014 because of this case. Because when they found out that, wait a minute, we need the debtors to sign. So what I want to emphasize is also in my brief, I argue with respect to the jurisdiction of the judge to enter a contempt hearing. This was an administrative hearing. The order requiring the money was basically in an administrative hearing. Subsequently, when my client was late in paying, the citation hearing was a judicial hearing, but there was no jurisdiction to hold a judicial hearing. That's why she didn't have jurisdiction to hold a judicial citation hearing. But even if she did, she did have jurisdiction. The only evidence that was presented was $25,000 in an escrow account that belonged to my client. Now the Judge Cox found that that escrow money, which is typically for real estate, belonged to my client. Okay, maybe that I should have argued is clearly erroneous. But even if it's not, even if we accept that, the amount to be paid was $28,000. So my client, the $25,000, wouldn't have complied with that order. Did he ever appeal the judge's imposition of reimbursement of client costs, client payments and costs? Did he ever appeal that? Yes, he did. He appealed that directly to the executive committee, Your Honor. And then the executive committee ruled that it didn't have jurisdiction. I'm not talking about the sanction. No, no. I'm talking about Judge Cox's order regarding reimbursement of client payments and costs, irrespective of the contempt proceedings that were conducted later. That was initially appealed, I believe, to the district court, and then the district court sent it to the executive committee. No, it's actually not even mentioned in your brief. The U.S. trustee's brief says there was never an appeal from that order, and I couldn't find any. All right, well, let's- So if that's true, has your client waived that issue on appeal? The issue of whether that he was unable to pay the money? He didn't waive that. Judge Cox's order that he pay reimbursement of client payments and costs. That may be true, and we'll accept that he has to pay it, and he is willing to pay it. He attempted to pay it. He couldn't. He didn't even have the $25,000. That was escrow money, $25,000. But my argument to you, even if he wasn't clearly erroneous, that $25,000 was not enough to pay for the initial $28,000. So, therefore, there wasn't clear and convincing evidence to show that he could have complied with it on time. I see I'm in the rebuttal time. If there's no question, then I'll reserve my rebuttal. Mm-hmm. Certainly, Mr. Salem. Mr. Golden. Good morning. May it please the Court. My name is Cameron Golden, appearing on behalf of the United States. I'd like to start by addressing some of the statements Mr. Hussain makes in his reply brief and now repeats here to this Court today. He says that there was only one document the debtors needed to sign and that they all signed that one document. Both of those statements are not supported by the record. For example, talking about the declaration of electronic filing he refers to, the very first such declaration in Mr. Hussain's appendix A, that of Mr. Hussaini, the Court found that actually Mr. Hussain or someone under his control signed that declaration. The next declaration is of Mr. Hayter and the Banksy Court specifically found and Mr. Hayter testified he didn't sign it and the Court found that Mr. Hussain or someone under his control signed that declaration as well. The Court also found Mr. Hussain filed the declaration in the Banu case. And the Court found that Mr. Hussain photocopied this one document declaration in the Ansari case and the Manaski case. So the statement now to this Court that they all signed that one document is supported by nothing in the record. In addition, as this Court has pointed out already, it was never the case that debtors needed to only sign one document. That would happen if all documents for the bankruptcy were prepared at the same time, completed, reviewed by the debtor, then the debtor would sign the one document. But Rule 1008 by its own terms, which requires the verification of the debtor, also refers to amendments. And there were numerous amendments in these cases that were filed and there were declarations filed with those amendments and those declarations also had photocopied signatures that Mr. Hussain used instead of the debtor's own declarations. This was perpetrating a fraud on the Court, the creditors, the trustee, because all these documents purported to say that the debtors had reviewed these documents and everything contained therein was true, accurate, and complete. But that didn't happen because Mr. Hussain signed their name and photocopied their signatures. In regards to the Manaski case, which I'd like to address briefly, which the debtor resided in Bulgaria since 2008, but Mr. Hussain filed not one but two cases for this debtor whom he had never met. And the first case he filed for him in DuPage County, but that was Mr. Manaski's sister's address that she had moved to after Mr. Manaski had already left for Bulgaria and didn't return. This is just another example of what the Bankruptcy Court referred to as Mr. Hussain's disregard for the truth. And all the documents also show that the Bankruptcy Court was correct in finding that Mr. Hussain is abjectly indifferent to the factual accuracies of the documents he files with the Court. As the Court pointed out, 93 out of 110 had the same $3 amounts to the penny for cash, household goods, and clothing. 106 out of 110 of Mr. Hussain's clients apparently had precisely $200 in cash at the time of filing. And as someone who's worked for the U.S. Trustee for 13 years, I would reject the statement that this is something that all bankruptcy attorneys do. The list goes on. I don't think I need to waste the Court's time repeating the things that Mr. Hussain has done. Could I fast forward a bit to the issue of the contempt order? Yes, Judge. As I understand it, the appellant appealed that order to the Executive Committee, and they dismissed it for lack of jurisdiction. Yes, Judge. So my question, I guess, is, is that issue properly before us? Has the appellant waived it, or should it be remanded to the District Court Judge because the Clerk's Office didn't forward it to the District Court Judge as you might argue the bankruptcy rules require? Yes, I believe the third option is the correct option. It should have been sent over to a single District Court Judge because it wasn't a disciplinary matter. It happened to occur in a proceeding, but it was a straightforward contempt motion. Yes, and I don't think it's waived. I think he did try to appeal it, but no intermediate court has reviewed it, so it's not properly before this Court. Lastly, I'll just say that, as this Court has already noted, Mr. Hussain repeatedly says that there are no facts in dispute and then goes on to state many things as facts that are contradicted by the record. He does not challenge the Bankruptcy Court's findings. Factual findings is clearly erroneous, and I certainly do not believe that the Bankruptcy Court abused its discretion in permanently suspending an attorney who, despite repeated warnings, continued to photocopy signatures, sign sworn documents on behalf of his clients, and repeatedly present false statements to the Bankruptcy Court. Thank you. Thank you, Counsel. Anything further, Mr. Salem? Yes, Your Honor. Your Honor, in the Lew case, he had four previous warnings. He has four sanctions. In this case, there were no previous warnings. As a matter of fact, one of the first U.S. bankruptcy trustees, Stephen Wolf, who discovered this, said to my client, don't do it anymore. Stop. And he stopped, Your Honor. I asked this Court also to look at my section, Roman numeral number three, that talks about substantive due process, how to disbar somebody permanently violates, shocks the conscience of a reasonable and impartial person. And, Your Honor, all the debtors testified that they signed those electronic forms and they all conveyed and they reviewed all the documents that were submitted. In addition, Your Honor, my client testified that he did not know his assistant was photocopying the assistant. Counsel, you say they all testified, that they all reviewed the documents submitted. Many of them testified that Hussein asked them to sign blank documents, which he later filled in and submitted. And Judge Cox found that that's what happened. Are you contending that that's clearly erroneous? I didn't see that argument either. Your Honor, they filled out, yes, blank documents. But the point is, with respect to all the facts, all the details, none of them said, no, I didn't say this wasn't my asset or this was. So, in other words, all the pertinent information, they did review. There was no contradiction of that, Your Honor. And I see my time is up. I ask the Court to review. Thank you, Counsel. Thank you, Judge. The case is taken under advisement.